to the last case for today, which is what some of the people who are our audience have been sitting through to get to, and that is Whitmore v. Liberty Mutual. May it please the court, my name is John Sullivan, and I am representing Liberty Mutual Fire Insurance Company, along with my colleague Stacey Jumper in this matter. We've asked for five minutes of rebuttal. Sure. In this case, Liberty Mutual is appealing from an order that was entered against it, granting summary judgment to the Whitmores in connection with a claim of damage to their home. We understand the oil was coming in and somebody, somebody negligently either overfilled the top, the tank, or there was a leaking pipe or something like that. Yes. Our understanding, Your Honor, is that there was a, and this was a spill situation. I'm not sure that in the record the exact mechanism of the spill is established. Okay. And Judge Prater said it wasn't a pollutant because it didn't go into the air. And you say, I mean, we really do read these things, and you say you're adding words into the contract and the insurance company, you're not supposed to do that, right? That's correct, Your Honor. We're, we're saying that the contract language as written doesn't have an into the environment restriction. Isn't that inherent in the word pollution? No, I don't think it is, Your Honor. And in fact, I think that there is binding precedent that is held that an into the environment requirement isn't implicit or explicit within that language. Binding precedent by whom? Actually, there are binding precedent from this court in the Reliance Insurance Company versus Mosner case. And also from the Pennsylvania Supreme Court, and this case is a diversity court, a diversity case in which Pennsylvania law applies. And that case is the Madison Construction case. And, Your Honor, I want to refer a little bit to real life. Just to go on the same point, I thought when the judge was talking about releasing to the environment, the judge was seeking a definition of pollution and referencing what the definition was in various federal regulations and state statutes. He wasn't making a finding in this case, but looking for a definition. Isn't that the context in which the judge referenced release into the environment? The court did, in this case, look to environmental statutes and found that some of those statutes which refer to pollutants require or deal with situations in which there is a release into the environment. And Judge Fuentes, I'd respond in two ways. First of all, if we look at the Madison Construction case, the Madison Construction case involved a situation in which there was a release within an enclosed facility. In the Madison Construction case, the court- But there were fumes. Correct. There were fumes and they caused the guy to go backwards and fall, etc. So there had been a release of fumes into the atmosphere, right? Your Honor, I would respectfully disagree. Well, you can't have fumes if it hasn't come out in some way, right? There was a release of fumes within the enclosed facility. Yeah, but there was a release of fumes. Was there any release of fumes in this case in the people's house? There wasn't. This isn't a fumes-related case, but there was a release of the oil in that the oil was supposed to go into a storage tank and ended up in the Whitmore's basement. But it didn't release out. I mean, they're not claiming, I think, they don't claim any damage other than physical damage, is that correct? Your Honor, they not only don't claim any damage other than physical damage, but the only thing that this policy provided coverage for was damage to the Whitmore's house. Okay, so it was on the basement, maybe in the walls, they maybe had to repaint, etc. Cost all of $18,000, between $12,000 and $18,000, right? And yes, and if I can get back a little bit to the question that you raised about the release of fumes in the Madison Construction case, the reason that I think that it's important is that the court in that case did look at the Clean Air Act and the definition of pollutant in the Clean Air Act and found that the constituents that were released as fumes were pollutants. But the Clean Air Act, by definition, does not apply to releases within a building. It only applies to releases into the ambient air, which has been defined as releases outside of a building. When we go back and look at the Reliance v. Mosner case, the Reliance v. Mosner case, from a procedural standpoint, is an interesting case because it is decided after the Pennsylvania Superior Court issues its ruling in Madison Construction. And in that case, the Pennsylvania Superior Court ended up ruling that it was in- No, the Pennsylvania Supreme Court decided Madison, not the Superior, right? What happened is, Pennsylvania Superior Court decides Madison Construction and says, you can't have a release into the environment. Then this court, in Reliance v. Mosner, looks at the Madison Construction decision of the Pennsylvania Superior Court and says, based on the Superior Court's decision, you can't read an into the environment requirement into the pollution exclusion. Your view is that heating oil, given the nature, the chemical composition of it, is a pollutant. Regardless of where it's built or what happens, heating oil is a pollutant and therefore, cleanup is excluded from your policy. Your Honor, yes, as long- There's more to it than that. As long as what happens is that it's a, I, we don't claim- As long as it's in a tank, is it a pollutant or is it not a pollutant? No, it's not- That's what I was going to say. I thought your argument was, heating oil is a pollutant if it's found in a place where it's not supposed to be. That's exactly what our argument is. For example, any fumes, I mean, liquid, gas, solid, there are a whole bunch of things, gasoline. If it's in an underground storage tank at the BP gas station, it's not a pollutant, right? Your Honor, that's- If the tank leaks and it seeps into the soil, it becomes a pollutant. I thought that was your argument. That is precisely our argument, and it's- Is coal a pollutant? Pardon me? Is coal a pollutant? Your Honor, I- C-O-A-L, coal. I don't think that you can answer that question in the abstract. It depends, and this is what I thought that was the point of the Madison construction case. That if coal is where it shouldn't be, if it ends up that coal is, by way of example, disposed of on your front lawn, then your front lawn is polluted. If coal is put into a coal bin and is then being used to heat your home, it is not a pollutant. But then your policy is really not doing what one would look at it to do. I mean, you buy a policy, and if they- I was trying to think of an analogy. It was hard to oil. The only thing I could think of was coal. You know, they used to get- When I was little, they would deliver coal through down chutes, I think, down into the basement. Right? And if that coal went into the basement instead of into whatever was there for it and messed up the basement, your policy wouldn't cover it? Is that what you're telling us? Because it was not where it was supposed to be? Your Honor, I guess my answer is that I'm not sure that I have enough facts under that hypothetical to answer. And the reason that I'm saying that, and I don't mean to be sidestepping your question, is that when we look at this case, we have oil that contaminates a basement under the dictionary definition. And then when the people come to address the problem, they treat it as a pollutant. They seal the basement to make sure- Well, they treat it as a source of the damage, I guess. I think that's what Judge Prater was saying. Let's look at this practically. You know, they have this policy, as I understand what she was doing. They have this policy, and it covers damage to the house and the property. And somebody negligently- Let's assume that it came out of a leaking pipe or overfilled it, and that caused damage to the property, she said. And it's covered. It's not- As I understand what she's saying, she's saying it's not what they were really concerned about with all these pollution exclusions, which really came into being in the industry. And I haven't had the time- We haven't had the time to look it up, but we could. They came into policies because of all this stuff, the environmental concern about the things that went into the air. Am I wrong? Your Honor, you're not wrong that the pollution exclusions were a reaction to environmental- What was going on in the world from an environmental standpoint. But I would say, Your Honor, that that specific issue was raised and rejected in the Madison Construction case. In Madison Construction, the insured argued that the purpose of this exclusion was to address traditional environmental situations. A landfill. And the court in Madison Construction, and in cases throughout the country, said, we read the language as it's written. The poll star of the contract interpretation is the policy language. And the policy language says that the test is whether the substance at issue has contaminated, it qualifies as a contaminant or an irritant. In this particular case, it qualifies- What does it mean to contaminate? Pardon me? What does it mean to contaminate? So a dictionary definition of contaminant is essentially something that contaminates, and I know, but, and something that contaminates is then defined as something that is rendered impure or unclean. And in this- It harms, it dirties it. Judge Prater found this was a contaminant. I wanted to follow up because, I mean, it's so broad. I can, I can spill motor oil on my basement or garage floor, and I could also spill a can of paint. Or a jar of spaghetti sauce, and consider it contaminated. But your, your broad analysis and definition would exclude all of those from any coverage. For example, if somebody slips and falls on the paint or the spaghetti sauce or the oil. Your Honor, I wouldn't consider that the pollution exclusion would apply in your slip and fall analogy because of this. In that situation, the harm isn't caused because the substance that's on the floor is a contaminant or an irritant. It's a slippery substance. What, and what the courts have done, and in fact, in the Madison construction case, what happened was the person, the claimant in that case, was overcome by fumes and then slipped and fell. And I, I apologize because I'm out of time for my first. That's all right. I just need more, I need more towns. Go ahead. No, keep on talking. What we're looking at, and, and, and, and let me talk about a second aspect of, of, of. Could you also mention the absence of an expert report, which was, a report was presented in the Madison case that aided the court in coming to its conclusion that there was pollution, Euro core, Euro care, because all the qualities were presented to the court and so forth, but that wasn't done in this case. No, and, and, and, Your Honor, in the Madison construction case, I don't believe it was an expert report. I think it was a material safety data sheet, which is a description of the constituents of the property. It helped the court determine the qualities of the substance that was at issue. It did. But Your Honor, in this case, we were dealing with a situation in which we had Pennsylvania Superior Court precedent in the Graham case that had ruled that heating oil was a pollutant. We had federal statutes that had found that oil was a pollutant. It's our position. If you're talking about heating oil that's built inside a home, if you're talking about polluting, perhaps the environment or the soil or ground water, there's quite a difference. But, but the test, Your Honor, isn't, under Madison construction, the test isn't, does the substance qualify as a pollutant under the particular, um, factual circumstances? Let's look at all the circumstances that, that are, that contribute to damage, as I understand the test. Correct. And what we're looking at here, Your Honor, is we're saying we have a dictionary definition of, of, of, um, pollutant. This is something that has contaminated. This is something that has made unclean or impure in terms of the basement. We look at what happened from a factual standpoint in which when the spill occurred, one of the first things they tried to do was to make sure they sealed the drain so that the oil couldn't get any further than the basement. Then the Liberty Mutual people came out, tested to see if there were any pathways, um, of this substance into the groundwater. So all of the, the conduct that, um, at the time was to treat this as a contamination situation. We have. Would it be any different if it had been paint? Going back to Judge Fuentes' question. If it had been paint, um. They would do the same things, wouldn't they? Well, Your Honor, if it had been a paint spill, I guess in that situation, the first thing that I would want to know is what were the constituents of the paint and what was the nature. You say if I buy an insurance policy and somebody spills paint in my house and it messes up the floor, that the insurance company is going to look at what was in the paint? Your Honor, and my problem is sometimes with the hypotheticals is that it depends. I mean, it's a perfectly valid, it's supposed to have been milk. Well, milk wouldn't qualify as a pollutant. If, if the, if the claim in your paint situation. Judge Fuentes. I'm sorry. And I, and I apologize, but if the claim was we now have paint on our floor and the paint has to be removed because essentially it's, it's discolored the floor. Yeah, that's right. Then that's not a pollution situation. Well, but isn't that what happened in this case? The oil. There are, there are substances that do have toxic qualities such as varnish or shellac and things like that. You could spill that on the floor. Would that be a pollutant? If you had a, a substance, and again, if, if. Well, you have the fume situation, which can ignite. It could be. And it was. The policy that, that it would be pollutants. I apologize. Under your policy, they would be pollutants and, and any cleanup or physical damage would be excluded from coverage. It depends on the nature of the claim. Again, if what you're talking about is a situation in which there is a spill of a substance that gives off a toxic fume.  They didn't, if they had claimed that they were injured by the fumes or that the house was injured by the fumes or something like that, that would be different. But that's not this case. My law clerk asked a question and I can't answer it. He said, suppose there's a vial or something that has in it a radioactive substance. Was that your, your question? And it banged against, somebody came by and broke a window with it. And it's clearly a pollutant that's in it. Would that be covered by the policy? In this analogy, is the, is the radioactive substance. It hasn't come out. It hasn't, it hasn't come out. It's just the window broke. No. That wouldn't be a pollution situation. Because what's happened in that situation is in order for the exclusion to be triggered, there has to be a release or a discharge of the pollutant. In that situation, you would have that the vial that contains the substance would be the mechanism for damage. But the damage that occurred wouldn't be caused by a release of a toxic or, of a toxic substance or any contaminant or pollutant. Okay. Okay. Thank you very much. Thank you, Your Honor. Good morning. If it pleases the court, my name is Stephen Feinstein. I represent the, the Whitmores on this appeal. I'm going to try and give you the example that perhaps the court is searching for to explain the distinction. Assuming that the insurance policy had an endorsement in it to, for backups of sewers and drains. Or there was otherwise coverage in the policy for an overflow of a toilet, which would normally be in a policy, particularly one like this, which is an all risks policy. Fecal matter, or what we call black water, dirty water that comes into the house, would clearly contaminate anything that it comes in touch with because of the fecal matter. And yet that would not be considered to be, or should not be considered to be, a contaminant or a, or a pollution under the pollution exclusion as it is maintained by the, by the insurance company. Why not? Because, because it is not, because the policy would be, under those circumstances, would be specifically providing the coverage that was there. And I've never seen a circumstance. But it does contaminate, doesn't it? In the classic sense of the word, it would contaminate, but it would not be considered under the pollution exclusion. And I've never seen an example of a, of a toilet overflow or a backup sewer and drain that, that was excluded under that portion of the policy. Not all contaminants are pollutants. Correct. So what is a pollutant? A pollutant is, under, if you go back to the Madison, the Madison decision, the Madison decision specifically gave guidelines as to, to, to, as to determine whether something is a pollutant under the policy if it is not, if it is not expressly included in a laundry list of items that are excluded as a pollutant. And in this case, there are no petroleum-based products that are, that are exclusive, that are expressly contained in the exclusion. You don't doubt that if this tank was outside and ruptured and heating oil came out into the soil, that this would be considered a pollutant. Not under the Epstein decision, it wouldn't be. Under the. It would not be a pollutant? Under the Epstein decision, which followed the Madison guidelines. Oil going into the soil and groundwater would not be a pollutant? Under the Epstein decision, which found that heating oil was not a, a pollutant as a matter of law, the answer to that question would be no. Under Judge Prater's decision, the way she worded her decision, the answer would be yes. Because she, she said that you win because this was not released into the environment. Correct. Correct? Yes. So under her rationale, if the heating oil in this case, let's say it was a, I don't know, how many gallons, do you know what we were talking about here? I really don't know. I don't know that that was ever factually determined. Let's say 20 gallons. Okay. Under her analysis, correct me if I'm wrong, but as I understand her analysis, if 10 gallons of the 20 gallon spill went onto the floor and 10 gallons seeped under the footer and flowed into the yard, the part that went into the yard would be deemed a pollutant because it was, quote, released into the environment. That's one reading of, of her opinion. The way I interpret it. Is it the right reading or the wrong reading? You can feel free to tell me it's the wrong reading. I actually disagree with that because the way I read her opinion, in order for it to be pollution, a pollutant, it would have to be released into the environment and then seep into the house, not the other way around. If, if they had spilled the oil into the ground and then it seeped into the basement, under her analysis, then it would be a pollutant. That was my hypothetical. The oil seeped into the, to the environment, into the soil and down into the groundwater. You said that's not a pollutant. I said under her, under her opinion, it is. My hypothetical, you said it wasn't a pollutant, maybe I misheard you. What I said was that under the Epstein decision, it's not because under the Epstein decision, it said that it was, that heating oil is not a pollutant as a matter of law. Figure out when is it, boy, heating oil a pollutant and when is it not, and according to you, it's never a pollutant. Our position is, and it's consistent with the Epstein decision, that because the United, neither the United States government nor the Commonwealth of Pennsylvania consider petroleum-based heating oils to be pollutants, that it is not a pollutant as a matter of law. Why, with all due respect to our employer who pays our, our wages, why does it matter what the United States government says? This is a contract between private parties. Don't they, don't you have a right to, to determine by definition in the contract what is a pollutant and what isn't, regardless of what the EPA says? Because under the, because under the Madison decision, the, the, the Pennsylvania Supreme Court decision, it said you have to look to those sorts of statutes to determine whether something is a pollutant or not a pollutant when it's not expressly included in the policy. They wrote, Madison says you have to look at whether the, the substance is found in a place where it belongs. Isn't that what Madison says? Maybe it's saying two contradictory things at the same time. I don't, I'm struggling with that. I don't think it's, I don't think it's contradictory, but I think it clearly indicates that if, if, you have to understand that looking at these policies as a whole, not even necessarily looking at the pollution exclusion, that in the Commonwealth of Pennsylvania in general, there is a presumption in favor of coverage. There's also a, a, in this type of policy, which I've illustrated in the, in the brief, is an all risks policy, which places the burden on the insurance company to show that it's not covered under the policy, as opposed to me having the burden to show that it is covered under the policy. Well, that's black letter law, we already know. All right. But the point, help us, help us sort through the, the tough issue. The tough, but with that as a background, what Madison is saying is that because the insurance company has the ability to write the policy, it has the ability to put in specifically everything that it considers to be a pollutant that would be excluded under the policy. It's not required to list 19 things because then inevitably in, right, or, or 632 things, because then the 633rd thing they didn't think of, I mean, they're not required to do that. I agree with that. However, the, what Madison has said is if they're not going to do that, and that's precisely why they don't do that, is because the 633rd thing will, will pop up. Is that, where Madison says that if it is not expressly excluded under the policy, or specifically defined, then you're going to look for other ways of determining whether it's a pollutant under the policy. So the Pennsylvania Supreme Court has issued a mandate in, in Madison, which says you have to look to other sources to define what is a pollutant, what is a pollutant, and what's not a pollutant. So since the policy doesn't define that heating oil is a pollutant under the policy, Madison says you have to go to other sources. What are the other sources? Well, the Madison court, the Madison court actually cited statutes which were from the Pennsylvania, from, from Commonwealth Pennsylvania and, and the United States. One of them was CERCLA. They were both cited in the brief at, the statutes that they did, which is exactly the analysis that the Epstein court did when it made a determination that home heating oil was not. I see no distinction at all between heating oil, a ruptured tank, and spillage of heating oil inside a home, and a tank that ruptures by a stream, and the oil goes into that stream. Oh, Epstein, I see. You see no distinction at all. Oh, are we asking on a person, are you asking on a personal level or on a legal level? On a legal point. On a legal level, I will tell you that there are, there are cases across the country that don't find a distinction. However, the one case that was decided on this issue, on this express issue, subsequent to Madison, using the Madison analysis. Which is? Which is the Epstein case. But that's a district court unreported decision. That's not precedential. I, when you kept saying Epstein, I kept looking for, it's just, it's just one court, and it's not precedential. It is, it is a district court case. It is not, it is not binding on this court. I understand that. But it is the only decision subsequent to Madison that has expressly ruled on the issue. Who wrote it? Off the top of my head, I do not recall, Your Honor. Oh, okay. It's the only case in the Commonwealth of Pennsylvania that has expressly addressed the issue of whether home heating oil is a pollutant. And it found, as a matter of law, it was not. Now, you have. It was not a pollutant as a matter of law. Yes. But how, I guess I'm still struggling with this all or nothing. Isn't that just an abstract, I guess what I'm suggesting to you is it seems to me to be an abstract definition that defies common sense because when I'm filling up my gas tank at the station and I put the gas in the tank, it's not a pollutant. But when I somehow spill the gas all over the soil, it is a pollutant. I mean, how can you just say gasoline is a pollutant? It is not. How can you say home heating oil is or is not a pollutant? It depends where it's found and what function it's serving. But it's not me who's saying it. It was the Epstein court. Well, actually, I'm just adopting the logic. But we need to decide whether, to say Epstein said it doesn't persuade me that Epstein got it right. But going, I think I'm giving you some examples why, suggesting why Epstein may have been wrong. Explain to me why I'm wrong. Isn't it really what Judge Prater said in a way? But using Judge Prater's logic, that would be along with your logic, Judge Hardman, in the fact that basically she's saying it would have to be released into the environment before it becomes a pollutant. Which goes directly to the first question that was asked, which is- What's odd about that is this is a homeowner's policy protecting a home. So Judge Prater's analysis suggests that if it gets sent out of my home, then the pollution exclusion kicks in for a homeowner's policy. But if it's polluting inside my home, the pollution exclusion doesn't kick in. If it's damaging inside my home, that's right. That seems to be upside down. The distinction I would draw, aside from what I've said earlier, was that, as I read Judge Prater's decision, if the home heating oil had been released into the ground and then seeped into the home, that it would be based upon- the pollution exclusion would be applicable. Under your example, that the home heating oil was released into the home and then left the home and into the environment, I don't think- I think that the pollution exclusion would apply for the purposes of cleaning up the ground outside the house, but it may not apply to the damages that are inside the house because those damages were done by the release inside the home. Why not? I guess in a homeowner- does the typical homeowner's policy cover- it covers the house and the yard, right? The property- the real estate. The house, the real estate. Only the edifice. Correct. No, you can't say that. Oh, I'm sorry, I'm sorry, I didn't hear- I'm sorry, I didn't hear the question. Does this policy- I guess forget what the typical one says- does this policy cover the edifice only or the edifice and the yard, the real estate? Yeah, it's an interesting question because it clearly- no, it clearly- it clearly covers the house. There are times when it is going to cover certain things on the property outside the house. There are going to be times when it's not. For example, if it- if there is a broken drain pipe that is outside the actual structure, it may cover the access to repair a broken drain pipe, but if there is a- but if there was a spillage of oil onto the ground, it very well might not. Does it cover a child's play set outside? It- that may depend on whether- are we talking about from- I'm just talking about what an ordinary homeowner's policy covers. Oil risk. I mean, I think that's what Judge Hardiman is- I would argue- I would certainly argue- You don't represent the insurance company, but you are Mr. Sullivan. I would certainly argue, unless that I found that there was express language in the policy to say that- that playgrounds, you know, a play set is not covered under the policy. There are policies I've seen that will exclude such things. It may depend on whether it's permanently attached to the ground. It may depend- it's going to depend on the express facts of the- the specific facts of the case, and it's going to depend on the specific languages contained in the policy. It's almost impossible to answer that question in the abstract. Isn't there, though, something in Congress about the district court's notion that the pollution exclusion kicks in if it's released outside the edifice, but if the- if the contaminant- and she called it a contaminant. Yes, she did. There's no doubt this contaminated the basement. Isn't there something in Congress about saying that when it's released outside the edifice, the exclusion kicks in, but as long as it stays within the edifice, no, the exclusion doesn't kick in? How do you explain that distinction? I'm not sure- Well, actually, that helps you a hundred percent. I- I- under Judge Prater's decision, that's exactly what Judge Prater decided. But what's- But even if it stayed inside- No, I know it stayed inside. Yeah, no, but if it had released fumes- Well, unless the- unless it had released fumes- But there's not a fumes issue. There's no fumes issue in this case. But if it had released fumes, then the pollute- then I gather from Mr. Sullivan that it would be- well, he thinks the whole thing is excluded. But Judge Prater would maybe say it's excluded. If it gets away from where it's supposed to be, what difference does it make where it travels? I'm not saying that. If it's not- Yeah. If it's- what I'm- I mean, we're getting into metaphysics here on this $12,000, $18,000 case. I know it's important to your client, but- And it is. If it's in the heating oil, these trucks come up, and they have heating oil, and they have hoses, right? And they transfer it from the truck into the house. If it's in the truck, it's not a pollutant. If it's in the hose, it's not a pollutant.  Once it's in the tank, it's not a pollutant. Once it leaves any one of those three places where it's supposed to be, why does it not then become a pollutant and remain a pollutant? Because it ain't where it's supposed to be. And it's causing damage. Because the question is dependent upon what your definition of what a pollutant is. If you look at the definition of a pollutant solely in the context that something is in the place that it's not supposed to be, then I don't have an answer for you other than to say that you're right. However, Judge Prater looked at it, and this was the entire problem that was presented, in my opinion, based upon the arguments that were made by the defendant. They were putting the cart before the horse. They were saying that a pollutant, you can't read that requirement into the policy. Judge Prater, as the very first question your Honor asked to Mr. Sullivan, it was a definitional thing. Judge Prater, this is the way she decided to define what a pollutant is. And when she decided to define what a pollutant is, she said in order for it to be a pollutant, it has to be released into the environment. And if you look at it from that perspective, then it is not a pollutant under the facts of this particular case. She actually said it's ambiguous. I'm sorry? She said the exclusion provision was ambiguous, and that tipped it in favor of your client. That's right. I thought you would – I mean, I thought Judge Hardiman's questions were right up where you would want us to hold, and you didn't. You keep – I mean, I don't – Well, you have to understand that I'm coming here under two different – You just have to – you want to do – what you should want to do is just uphold Judge Prater's verdict and opinion, period. And I don't know why you would knock that part of her opinion that doesn't hurt you. Because the fact is that it does hurt insureds. Yeah, but you're not representing the insureds you're representing. Is that right, or do you represent insureds? Do you represent an association of insureds? No, I represent the Whitmores in this case. Okay. And in my brief, as we've indicated, we want you to uphold the decision. However, at the same time, we feel that the home heating oil is not a pollutant at all. If the Court finds that under the circumstances that Judge Prater indicated it is a pollutant, then we would simply ask you to affirm her decision. Okay. We just don't think her decision went far enough, in all honesty. In its nature, it's not a pollutant, but it depends what happens. It's Judge Hardiman's point. It depends if it's where it's not supposed to be. It just might be. If it's in the soil and can seep into the groundwater, it's a pollutant. If I can just address one last point. I realize I'm out of time. You're way over your time. Okay. Thank you.  Mr. Sullivan, you reserved two, three minutes? I reserved five minutes, Your Honor. Five minutes, but you took most of that before. I'm happy to be shorter if you would prefer, Your Honor. Let me respond to a couple of issues that were raised. First, the policy that was issued, the coverage that we're talking about, is coverage only for the home. The policy says that it will describe the types of property that are covered. It identifies the residents at where the Whitmores live. It specifically says that land isn't covered. So a pollution exclusion that kicks in once it hits the land is totally silly in a policy like this, then? Exactly, because typically exclusions take away coverage that would otherwise be provided. I don't even need to get to the pollution exclusion if I've got contamination of land. It's not covered. Exactly. The other issue that was raised was this issue of, you know, is something a pollutant in the abstract? And the answer is, I think, exactly what Judge Hardiman had said, that whether something is a pollutant depends on where it is. By way of example, in the Wagner case, which was a Pennsylvania Superior Court case, the court specifically looked at the argument that was made by the policyholder in that case because the substance at issue was gasoline. And the policyholder said gasoline is a useful substance. Well, you would say then that the heating oil is a pollutant here because it contaminated the floor of the plaintiff's residence. That's exactly what I would say. Yeah, but other things could contaminate the floor of the plaintiff's residence. Milk. Milk. Any number of things. Well, Your Honor. You see, this is where we get back to the district court's decision. You really have an ambiguous issue here. And she decided, because of that, in favor of the plaintiffs. But, Your Honor. You could have had a provision that excluded heating oil in your contract. We could have, but, Your Honor, if we had had an exclusion that set out every toxic substance, the toxic substance registry is thousands of substances. And if we were talking about milk, the reason it wouldn't qualify as a pollutant, because, first of all, no one in common parlance would say that if you had a spill of milk in your kitchen, that your kitchen was contaminated. How about paint? Take his example. And the answer in terms of paint is that no one in the common parlance would refer to paint as a substance that had polluted if you basically had. But didn't you answer by saying it depends on what was in the paint? Well, and I may have answered inartfully, and I'll try to fix that. I thought that's what you said. It depends on what the nature of the claim is. By way of example, in the. The damage to my house claim. In a damage to the house claim, then I would say that you wouldn't have a situation in which the pollution exclusion would apply. But the Madison construction case was not that much different from paint. It was a floor coating that gave off a fume that hurt the plaintiff. Because he fell. Well, he was overcome by the fumes first. He was overcome and he fell. So I really do look at it and say it really does depend on the circumstances. The problem that we have with the test that was enunciated by Judge Prater is if this oil spill had occurred outside, Judge Prater would have said pollution exclusion applies. I don't think we would have needed it because we wouldn't have coverage for land. But if it happens inside, pollution exclusion doesn't apply. Even though oil is identified as a pollutant. What's wrong with that? You said it depends on the circumstances. Isn't that what she's doing? But the problem is I think that the court cannot say that. That Judge Prater was wrong in saying that. Because the Madison construction court specifically said we're not going to read an into the environment requirement into policy language that doesn't say it. It's improper to do it. And what the judge did is by incorporating a statute that said, talked about pollution of the water and said, well, therefore I'm going to read an into the environment requirement into it. She did it through the back door, but she still ended up with the rationale for her decision was because the heating oil wasn't released into the environment, the exclusion doesn't apply. And Madison construction says you can't do that. But even if she got that wrong, we might affirm her by finding that she shouldn't have said this was a contaminant. Your Honor, and it's certainly possible that the court could look at the definition of contaminant, but I think under a dictionary definition, this was contaminant. But it doesn't have to be a pollutant if it's a contaminant though, right? They're not perfectly co-equal. Pollutant is defined in the insurance contract as a contaminant or an irritant. So I, I do think that then you have, then you get the wrong answer for the paint hypothetical, because if the definition of contaminant is something that makes it impure, when I spill paint all over my, my kitchen floor, I've made my kitchen floor impure. It's, it's a contaminant, right? And your Honor. Same with syrup or milk. I mean, my gosh, I haven't had the displeasure of smelling weak old milk, but I would imagine if. I don't because I don't buy it. I mean, if you're on vacation and you, you know, for the weekend and you have a house sitter watching your dog and your dog gets into your fridge and spills everything when you come home, I mean, that's going to render your kitchen impure, right? It would render your. Those aren't oil, those are just household, those are foodstuffs that are all over the floor. And you may be in a situation in which a situation like that, you would be stretching the pollution exclusion too far. But I do think that when you're in a situation in which you have something that has contaminated the basement under a dictionary definition and does qualify as a pollutant under environmental statutes and is treated as a pollutant. And I do think that it's important that you have people come in, that environmental consultants come in to look at this, what this problem is. When I come home from vacation, I clean up the mess on the floor. I don't call in hazmat or, you know, some expert to come in and quarantine the place. That's significant. Well, I think it's significant because the exclusion has to be construed in the context of the particular set of facts. Mr. Sullivan, your red light is on. I apologize for going over it. That's okay. Thank you for your time. I'd like to see both of you.